IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 19-39 |
| MATT JONES | : | |

**MEMORANDUM**

**SURRICK, J.**                                                              **JANUARY 25, 2022**

Presently before the Court is the Government's Motion to Schedule Resentencing and New Trial (ECF No. 130) and Defendant Matt Jones' Response in Opposition thereto (ECF No. 136). For the following reasons, the Government's Motion will be denied.

**I.    BACKGROUND**

Drugs, guns, and money. That is how the Government summarized its case against Matt Jones. The Government now concedes that the drugs, guns, and money from Jones' residence were seized in violation of the fourth amendment. After seeing this evidence at trial, the jury convicted Jones of seven counts related to heroin distribution and gun possession. The question now before the Court is whether any of those seven counts can withstand the admitted violation of Jones' fourth amendment rights. The Government argues that three of the counts are unrelated to and untainted by the illegally obtained evidence. We disagree. Because it is likely that the evidence from Jones' residence influenced the jury's verdict on all counts—not just the counts that are specific to the evidence seized from the residence—we will require a new trial on all counts.

In July of 2018, police officers gained entry into Jones' residence in Bensalem, Pennsylvania by falsely telling Jones that they were responding to a 911 call from a woman

inside. Once inside the residence, the officers saw drug paraphernalia and a gun. Officers then obtained a search warrant and seized nearly a half-kilogram of heroin, significant amounts of cocaine and marijuana, several guns, money counters, and over $100,000 in cash. This evidence forms the bases of Counts 2, 3, and 4 (possession with intent to distribute over 100 grams of heroin, possession of a firearm in furtherance of drug trafficking, and possession of a firearm by a convicted felon). It also supports Count 1 (conspiracy to distribute 100 grams or more of heroin). In addition to the physical evidence, the officers found one of Jones' associates, Carol Lucy, at the residence. Lucy testified against Jones at trial.

Several months prior to the warrantless entry into Jones' residence, agents orchestrated three controlled purchases of heroin that Jones allegedly supplied to two associates, Carol Lucy and Taylor Wood. In the first two controlled purchases, Lucy sold heroin to a cooperating witness in Cherry Hill, New Jersey. In the third controlled purchase, Wood sold heroin to the same witness at the Franklin Mills Mall in Pennsylvania. Wood also testified against Jones. These purchases form the bases of Counts 5, 6, and 7 for distribution of heroin (sales in January, February, and March of 2018).

Following a three-day trial in October of 2019, a jury convicted Jones of seven counts related to heroin trafficking and illegal gun possession. Jones filed an appeal. While the appeal was pending, the Government filed a Motion for Summary Reversal and Remand in which it conceded that the evidence from Jones' residence was seized illegally. The Third Circuit issued its Mandate granting summary reversal and remand on April 21, 2021. On remand, the Government acknowledges that the unconstitutional seizure entitles Jones to a new trial on Counts 1 through 4 but argues that Jones' convictions on Counts 5, 6, and 7 should stand.

II. **LEGAL STANDARD**

Not all constitutional errors require reversal. *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). If the error is "harmless beyond a reasonable doubt," the conviction stands. *Chapman v. California*, 386 U.S. 18, 22 (1967). To determine if an error is harmless, a reviewing court asks whether "there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. State of Conn.*, 375 U.S. 85, 86-87 (1963). The harmless error standard applies to fourth amendment violations. *Bumper v. North Carolina*, 391 U.S. 543, 550 (1968). The government bears the burden of proving that the admitted evidence was harmless. *Chapman*, 386 U.S. at 24.

III. **DISCUSSION**

At trial, the Government emphasized the connection between the counts against Jones and the drugs, guns, and money seized from his residence. In its closing statement, the Government listed the evidence seized from Jones' residence—"[s]hotgun, rifles, handguns, bags of ammunition, bags of cash"—and argued that "[a]ll that evidence ties back to the defendant, Matt Jones." (Closing Argument Tr. 3:15-17.) The Government continued: "I submit to you, members of the Jury, the overwhelming evidence you've heard in this case shows that [Jones' residence] was being used as a heroin distribution house and was being used by the defendant, Matt Jones, to package and process and distribute heroin." (*Id.* at 7:22-8:1.)

The Government was right. The evidence from Jones' residence is overwhelming evidence against him on all counts. Whatever doubts jurors might have had about Jones' involvement in Counts 5, 6, and 7 for distribution of heroin were almost certainly eliminated by this evidence. The logical inference from the large amount of heroin, multiple guns, money counters, and $100,000 in cash in Jones' residence is that Jones is a drug dealer who could

plausibly distribute heroin through associates at locations not far from his residence—exactly what he is charged with in Counts 5, 6, and 7.

Notwithstanding its prior reliance on the evidence from Jones' residence, the Government now maintains that the illegally seized evidence is harmless as to Counts 5, 6, and 7. First, the Government argues that the evidence against Jones apart from the unconstitutional evidence is overwhelming. The Government points to the direct testimony from Jones' co-conspirators that they received heroin from Jones, as well as phone records, text messages, and surveillance that all implicate Jones in the three controlled purchases. The Government argues that this evidence renders the unconstitutional evidence merely cumulative and superfluous.

This argument misstates the necessary inquiry and understates the strength of the unconstitutional evidence. In *Chapman*, the Supreme Court warned reviewing courts against relying on "overwhelming evidence" instead of asking whether the constitutional violation might have contributed to the conviction. *See Chapman*, 386 U.S. at 23. Regardless, because we find that the evidence from the residence was the overwhelming evidence of Jones' guilt on all counts, we reject the Government's argument that the evidence from the residence was merely cumulative or superfluous. That evidence clearly contributed to Jones' conviction on all counts.

In *United States v. Scarfo*, 685 F.2d 842, 846 (3d Cir. 1982), the Third Circuit observed that if the illegal evidence is the principal evidence against a defendant, then the error is not harmless. The Court stated that the first question in a harmless error inquiry is to determine "the purpose for which [the complained of evidence] was used when introduced." *Id*. Here, the evidence from the residence was the principal evidence against Jones, and its purpose was to establish that Jones distributed heroin from his residence, including the distributions through associates in New Jersey and Pennsylvania as charged in Counts 5, 6, and 7.

The Government next argues that the unconstitutional evidence relates to different crimes that are "remote and far removed" from what is charged in Counts 5, 6, and 7. In support, the Government relies on *Nezowy v. United States*, 723 F.2d 1120 (3d Cir. 1983). However, *Nezowy* did not apply the standard from *Chapman* because the issue in *Nezowy* was the effect of a violation of a witness' constitutional rights, not the defendant's. *Id.* at 1126 n. 8. Instead, *Nezowy* applied a test from the Second Circuit that looked at whether a "witness' testimony was remote from the crime charged," and whether a jury would link the violation of the witness' rights to the defendant's guilt. *Id.* at 1125 (citing *United States v. Natale*, 526 F.2d 1160, 1171 (2d Cir. 1975)).

Aside from the fact that *Chapman* and not *Natale* governs the case before us, the Government's argument fails because Counts 5, 6, and 7 are not "remote and far removed" from Counts 1 through 4. The evidence from the illegal search goes directly to the fact that Jones dealt heroin, which is what he is accused of in Counts 5, 6, and 7. Though the search of the residence and the three sales in Counts 5, 6, and 7 are separated by a span of months, it is not the "distant past" as the Government argues. (Govt's Mot. at 12, ECF No. 130.) Given that officers recovered $100,000 in cash alongside the drugs, it would be reasonable for the jury to infer that Jones had been selling heroin for some time before the search because those profits necessarily came from some prior sales.

Moreover, the activity in Counts 5, 6, and 7 was not far removed from Jones' residence. The sales in Counts 5 and 6 took place in Cherry Hill, New Jersey, about 13 miles from Jones' residence; the sale in Count 7 was less than three miles away. In addition, the Government explicitly connected Jones' residence to the distribution charged in Counts 5, 6, and 7. In describing the distribution process, the Government stated that Jones gave heroin to his

5

associates in his home to sell to customers elsewhere. (*See* Closing Argument Tr. 15:17-19.) ("[Jones] give[s] [Lucy and Wood] the drugs in the safety and security of [Jones'] own home and tell[s] [Lucy and Wood] to meet the customer and bring the money back."). Therefore, the heroin illegally seized from Jones' residence is closely related to the Government's theory of Jones' guilt on Counts 5, 6, and 7.

The Government further argues that Counts 5, 6, and 7 should stand because the jury was instructed to consider each offense separately and that a decision on one offense should not influence their decision on another offense. However, an instruction to consider each offense separately does not preclude a finding that errors on some counts require a new trial on all counts. *See United States v. Berkery*, 889 F.2d 1281, 1285 (3d Cir. 1989). *Berkery* also involved multiple counts of conviction for narcotics possession and distribution. *Id.* at 1282. The Third Circuit found that the counts were "closely intertwined" and that the error on two of the counts possibly "spill[ed] over" into the jury's decision on the remaining counts, regardless of the District Court's instruction for the jury to consider each count separately. *Id.* at 1285-86. We are similarly convinced that the instruction to the jury to consider each offense separately was insufficient to guard against the possibility that the jury was influenced by the overwhelming evidence from Jones' residence on the closely intertwined counts for heroin distribution.

In its Reply, the Government relies on *United States v. Lee*, 612 F.3d 170 (3d Cir. 2010) to argue there was no "prejudicial spillover" from the illegal evidence into the jury's consideration of Counts 5, 6, and 7. This reliance on *Lee* is misplaced. Because *Lee* concerned an evidentiary issue, not a constitutional issue, the Court did not apply the "harmless beyond a reasonable doubt" standard from *Chapman* that the Government acknowledges is operative for its Motion. *Id.* at 181, 194. (*See also* Govt's Reply at 4, ECF No. 138.) Instead, *Lee* applied the

four-part *Pelullo* test under a plain error standard of review.  *Id.* at 178 (applying test from *United States v. Pelullo*, 14 F.3d 881, 897-900 (3d Cir. 1994).

Even if this analysis controlled our inquiry, the Government's Motion would still be denied because each of the *Pelullo* factors favors Jones.  First, the charges all concern heroin possession, distribution, and related trafficking activities, so they are intertwined.  The heroin from Jones' residence is likely to influence the jury's consideration of other counts alleging heroin distribution.  Second, the evidence for each count is not sufficiently distinct—it is the same people with the same drugs.  Third, the Government acknowledges that the evidence from the residence is not admissible to prove Counts 5, 6, and 7.  As explained above, the instruction to consider each count separately is not enough to overcome the danger that the jury did in fact rely on this inadmissible evidence to convict on Counts 5, 6, and 7.  Finally, the evidence from the residence overwhelmingly established that Jones was a drug dealer and likely prejudiced the jury's consideration of whether Jones—who had lots of drugs, guns, and money at his residence—distributed drugs through an associate who was also found at the residence.

### IV. CONCLUSION

For the foregoing reasons, the Government's Motion for Resentencing and New Trial is denied.  An appropriate Order follows.

BY THE COURT:

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**