IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : CRIMINAL ACTION |
| v. | : |
| | : NO. 19-39 |
| MATT JONES | : |

**O R D E R**

**AND NOW**, this 22nd day of August 2022, upon consideration of Defendant Matt Jones' Motion to Dismiss Indictment with Prejudice for Violation of the Double Jeopardy Clause (ECF No. 173) and the Government's Response in Opposition (ECF No. 174), it is **ORDERED** that the Motion is **DENIED**.[1]

**IT IS SO ORDERED.**

BY THE COURT:

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**

---

[1] Though the title asserts a double jeopardy violation, Defendant's Motion to Dismiss is instead a repackaged complaint about the Government's litigation choices that Defendant previously made in his Motion to Dismiss on Speedy Trial Act grounds. (Def's. Mot. at 7-11, ECF No. 137.) Defendant's argument centers on the Government's decision to concede on appeal that the evidence seized from Defendant's residence—admitted against him over his objection at the first trial—is inadmissible. In originally opposing Defendant's suppression motion, the Government argued that officers did not violate Jones' Fourth Amendment rights when they entered his house without a search warrant because Defendant consented to the search. On appeal, the Government changed its position on the legality of the search, and it asked the Third Circuit to reverse and remand. The Third Circuit granted the Government's request, and the case is scheduled for retrial on August 22, 2022.

Now, four days after the deadline to submit all motions and about 72 hours before trial, Defendant asks this Court to dismiss the charges against him. The timing of the motion is perplexing because Defendant advances much the same argument that he made in a motion he filed in December of 2021. This time the theory is double jeopardy rather than the Speedy Trial Act, but the substance of the argument is the same. (Compare ECF Nos. 137 and 173.) In our prior Order we found that Defendant's rights under the Speedy Trial Act were not violated, so

we did not address his argument that "the indictment should be dismissed with prejudice because of the Government's alleged bad faith" in prosecuting this case. (ECF No. 143, at 8.) We now squarely reject Defendant's argument that the Government's decision to concede the illegality of a search is "egregious" and "intentional" prosecutorial misconduct such that the charges against Defendant should be dismissed.

Defendant argues that because the Government defended the legality of the search throughout the litigation before this Court but then conceded the issue without argument before the Third Circuit, it must have done so with the intent to prejudice Defendant. Defendant attempts to support his double jeopardy motion with case law on *Brady* violations, even though he acknowledges that there are no *Brady* violations in this case. (Def's. Mot. to Dismiss at 5, ECF No. 173.)

Though Defendant cites cases that "contemplate" that a prosecutorial violation could be so willful and significant that charges should be dismissed, this case does not come close to the "exceptional circumstances" that might merit that remedy. *Gov't. of Virgin Islands v. Fahie*, 419 F.3d 249, 250, 252-57 (3d Cir. 2005) (finding that dismissal with prejudice was not the appropriate remedy for a *Brady* violation involving a prosecutor's failure to disclose a potentially exculpatory ATF report because there was no showing of willful misconduct and, "in all jurisdictions, dismissal with prejudice is in practice a rare sanction for any constitutional violation"). A brief comparison of *Brady* violations and what is alleged here is instructive. *Brady* violations involve the prosecution's failure to turn over potentially exculpatory evidence. *Giglio v. United States*, 405 U.S. 150, 153-54 (1972). As such, *Brady* violations directly impede a defendant's ability to defend himself. They are serious precisely because the jury's verdict might reasonably have been different. *Id.* at 154. Even so, the traditional remedy for *Brady* or other pretrial violations is that the conviction is vacated, and the defendant receives a new trial—not that the charges are dismissed with prejudice. *Id.* at 153-54; *see also United States v. Morrison*, 499 U.S. 361, 365 (1981) (discussing pretrial violations of a defendant's right to counsel and stating that "the remedy characteristically imposed is not to dismiss the indictment but to suppress the evidence or to order a new trial if the evidence has been wrongfully admitted and the defendant convicted."). Here, far from impeding Defendant's ability to defend himself, the Government's change in legal position benefits Defendant. Because the Government now agrees with Defendant about the illegality of the search, some of the most incriminating evidence from the first trial will not be presented at the retrial.

Defendant suggests that the prejudice he has suffered is "evident and clear." (Def's. Mot. at 6.) But there is no world in which Defendant would be in a better position if the Government maintained its position that the search of Defendant's residence was lawful. If the Government had not conceded on the issue of the search, there are two possible outcomes (absent a further appeal to the Supreme Court). The first is decidedly worse than the situation in which Defendant now finds himself, as the Third Circuit could have decided the suppression issue the same way we originally did and affirmed Defendant's convictions on all seven counts. The second outcome is identical to Defendant's current situation. Defendant now faces four counts, none of which stem from the search of his residence—exactly what he would face had the Government not changed its position and the Third Circuit ruled in favor of Defendant on the suppression issue. The Government would similarly be free to "change tactics" and introduce evidence from an alleged co-conspirator's residence. Nothing about the Government's change in legal position caused Defendant to face a different retrial than he would have if he had prevailed on the merits of the suppression issue in the Third Circuit.

Despite the title of his Motion, Defendant did not address the standard for double jeopardy violations. We will do so briefly as additional grounds for denying Defendant's Motion. The prohibition against double jeopardy protects defendants from second prosecutions for the same offense following acquittals or convictions, and it protects against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). Defendant has not attempted to articulate which of these protections will be violated by his retrial. Defendant is not facing a trial or punishment for charges of which he already stands convicted because his convictions have been reversed. He stands in the same position as any other defendant who successfully appeals a conviction and therefore faces a retrial consistent with the rulings in the appellate court. And double jeopardy does not preclude retrials following successful appeals. *See id.* at 718-20 (discussing retrials following the reversal of convictions and stating, "At least since 1896, when *United States v. Ball*, 163 U.S. 662, was decided, it has been settled that this constitutional guarantee imposes no limitations whatever upon the power to retry a defendant who has succeeded in getting his first conviction set aside").

In addition to lacking a legal theory that would support dismissing these charges, Defendant has not presented any evidence to suggest bad faith or intentional misconduct on the part of the Government. Defendant's argument is an inference based on the amount of time between the Government's original defense and later concession of the legality of a search that assumes bad motives on the part of the Government. We will not presume any improper motive in a party's litigation choices, and we credit the Government's previous statement that its change in position on the legality of the search was a "good faith reassessment of the applicable facts and law." (Gov't's Opp. at 8, ECF No. 139.) As the Government noted in its prior response, Defendant's position that the Government's subsequent recognition of an error amounts to misconduct—even if significant time has passed—is inconsistent with the reality that mistakes occur during trials and the Government is obligated to do justice, including post-trial. *See, e.g., Brown v. United States*, 411 U.S. 223, 231-32 (1973); *Berger v. United States*, 295 U.S. 78, 88 (1935) ("It is as much [the Government's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."). Though there might be a case in which dismissal is warranted for prosecutorial misconduct, this is not that case, as an inference based on the amount of time it takes a party to switch its position on a debatable legal issue does not suffice to show willful misconduct and exceptional circumstances. *Fahie*, 419 F.3d at 250, 257. Defendant's Motion to dismiss the charges against him on the eve of trial will be denied.