IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 19-39 |
| MATT JONES | : | |

**MEMORANDUM**

**SURRICK, J.**                                                            **JANUARY 22, 2026**

Presently before the Court is Petitioner Matt Jones's *pro se* motion under 28 U.S.C. § 2255 seeking to set aside or correct his sentence (the "Motion"). For the following reasons, the Motion will be denied.

## I.  BACKGROUND

In 2019, Jones was indicted by a grand jury on seven counts alleging violations of various drug and firearm laws.[1] Before trial, Jones moved to suppress evidence seized from his home without a warrant. The Government opposed Jones's motion. We denied the motion and a jury convicted Jones on all counts. He was sentenced to 240 months in prison. Jones appealed the pre-trial decision denying his suppression motion. In response to Jones's appeal, the Government moved for summary reversal, conceding for the first time that Jones's suppression motion should have been granted. The Third Circuit granted the Government's motion and remanded the case.

Following remand, Jones moved to dismiss his indictment twice, first under the Speedy Trial Act and then under the Double Jeopardy Clause. (*See* ECF Nos. 137; 173.) We denied both motions. (ECF Nos. 144; 176.) Meanwhile, the parties agreed to dismiss certain charges that

---

[1] Jones was charged with (1) conspiracy to distribute heroin, in violation of 21 U.S.C. § 846 ("Count One"); and (2) three counts of distribution of heroin, in violation of 21 U.S.C. § 841(a)(1) ("Counts Five through Seven"). He was also charged with (1) possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1); (2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and (3) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (collectively, "Counts Two through Four").

1

rested on the unlawful evidence.² (*See* ECF No. 148.) Then, in a four-day trial beginning on August 22, 2022, Jones was retried for the remaining counts of the indictment, this time without the unlawful evidence. On August 25, 2022, Jones was convicted of Count One (conspiracy to distribute heroin) and Count Seven (distribution of heroin) and acquitted of the two remaining distribution charges. On March 14, 2023, Jones was resentenced to a term of 180 months' imprisonment.

Jones's sentence represented a downward departure from the range recommended by the U.S. Sentencing Guidelines. For purposes of the Sentencing Guidelines, Jones's base offense level was 24 because his conspiracy offense involved 274 grams of heroin. *See* Presentence Investigation Report ("PSR") ¶¶ 32, 33; *see also* U.S.S.G. § 2D1.1(a)(5). In addition, Jones was determined to have 12 criminal history points—10 because of previous criminal convictions and 2 more because, at the time of Jones's instant offense of conviction, he was on probation for two previous convictions. *See* PSR ¶¶ 44–50. This yielded a criminal history category of V. *Id.* ¶ 50.

Jones was also determined to be a career offender under the Guidelines, as (i) he was more than 18 years old at the time of the instant offense of conviction, (ii) the instant offense of conviction involved a controlled substance offense, and (iii) he had at least two prior felony convictions for a controlled substance offense.³ PSR ¶ 38. As a result of Jones's career offender status, his base offense level increased to 37 under the Guidelines and his criminal history category increased to VI. The career offender enhancement meant that Jones's recommended sentencing

---

² More specifically, the parties agreed to dismiss Counts Two through Four. (ECF No. 147.)

³ Indeed, Jones had three prior convictions for manufacture, delivery, or possession with intent to manufacture or deliver controlled substances. *See Commonwealth v. Jones*, CP-51-CR-0407581-2002 (Phila. Ct. Com. Pl.); *Commonwealth v. Jones*, CP-51-CR-1204771-2002 (Phila. Ct. Com. Pl.); and *Commonwealth v. Jones*, CP-51-CR-0611711-2006 (Phila. Ct. Com. Pl.).

range was 360 months to life imprisonment; without it, Jones's recommended sentencing range would have been 92-115 months.

Separate from the career offender enhancement under the Guidelines, Jones's sentence was statutorily enhanced because of his prior crimes. With respect to Count One, his conspiracy charge, Jones was sentenced pursuant to 21 U.S.C. § 841(b)(1)(B)(i). That statute provides a default minimum sentence of five years, increased to ten years "[i]f any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final." 21 U.S.C. § 841(b)(1)(B). Regarding Count Four, Jones's distribution charge, the maximum sentence Jones could face was increased from 20 years to 30 years, again based on prior convictions for a serious drug felony. *See* 21 U.S.C. § 841(b)(1)(C).

Unlike the Sentencing Guidelines' career offender enhancement, the statutory enhancement provisions of 21 U.S.C. § 841(b)(1) mandate an increased penalty which the Court cannot override. The Government filed an Information Statement pursuant to 21 U.S.C. § 851 establishing that Jones had previously been convicted a serious drug felony, which the Court relied on for purposes of sentencing. (*See* ECF No. 77.) As a result of Jones's career offender and statutory enhancements, the minimum sentence Jones could face was 10 years (or 120 months) of imprisonment, and the sentence recommended by the Sentencing Guidelines was 360 months to life. Jones was ultimately sentenced to 180 months' imprisonment, above the mandatory minimum and significantly below the range recommended by the Guidelines.

Following sentencing, Jones appealed our orders denying his motions to dismiss as well as his 180-month sentence. On July 12, 2024, the Third Circuit affirmed on all grounds. *See United States v. Jones*, No. 23-1558, 2024 WL 3384917 (3d Cir. July 12, 2024), *cert. denied*, 145 S. Ct. 562 (2024). On February 18, 2025, Jones filed the Motion now before the Court and, on July 3,

3

2025, the Government filed its opposition. On August 14, 2025, Jones filed his reply. The Motion is now ripe for adjudication.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). In order to prevail on a § 2255 motion, the movant's claimed errors of law must be constitutional, jurisdictional, "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962). Petitioners seeking relief under § 2255 therefore carry a heavy burden:

> [A] motion pursuant to [Section 2255] is reviewed much less favorably than a direct appeal of the sentence. Indeed, relief under § 2255 is available only when "the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice … and present[s] exceptional circumstances where the need for the remedy afforded by the writ … is apparent."

*United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)) (alterations and omissions in original).

If a petitioner demonstrates entitlement to relief under § 2255, then "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

The Court may in its discretion hold an evidentiary hearing on a § 2255 petition. *See Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). Such a hearing need not be held, however, if the "motion and the files and records of the case conclusively show that the prisoner is entitled

to no relief." 28 U.S.C. § 2255(b); *see also United States v. Day*, 969 F.2d 39, 41–42 (3d Cir. 1992).

### III. DISCUSSION

Jones presents five separate grounds for relief under § 2255, each premised on alleged deprivation of his constitutional right to the effective assistance of counsel. Although Jones's motion is timely, he has failed to carry his burden.

#### A. Timeliness

A one-year statute of limitations applies to § 2255 motions. 28 U.S.C. § 2255(f). Section 2255(f) provides that a motion to vacate must be filed within one year of the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

For purposes of § 2255(f), a conviction becomes final when the period for filing a timely petition for certiorari review expires. *Kapral v. United States,* 166 F.3d 565, 577 (3d Cir. 1999). The Third Circuit denied Jones's appeal on July 12, 2024. (ECF No. 217.) The period for filing a timely petition for certiorari review expired 90 days later, on October 10, 2024. *See Karpal*, 165 F.3d at 571. Jones had one year from October 10, 2024, to file a motion to correct or set aside his sentence. Jones's motion was filed on February 18, 2025, and is therefore timely.

### B. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a litigant must prove two elements. First, Jones must first demonstrate that his counsel's performance fell below "an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Jones must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [a] defendant by the Sixth Amendment." *Id.* at 687. Second, Jones must prove he was prejudiced by any objectively deficient performance by his counsel. He must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In assessing a petitioner's ineffective assistance of counsel claims, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. Counsel is given leeway to employ the strategy he or she considers most effective under the circumstances. *See id.* at 691. Ultimately, Jones must overcome the presumption that the actions of his counsel should be considered reasonable trial strategy. *Id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

\* \* \*

Jones's five grounds of alleged ineffective assistance of counsel are as follows:

> **(1)** Failure to object to both his categorization as a career offender and the statutory sentencing enhancement imposed by 21 U.S.C. § 841(b)(1)(B) under *United States v. Nasir*, 17 F.4th 459 (3d Cir. 2021);
>
> **(2)** Failure to oppose a motion filed by the Government on January 19, 2022, to continue trial due to an unavailable material witness;
>
> **(3)** Failure to file a motion to dismiss the indictment under Fed. R. Crim. P. 6(e)(3)(E)(ii), on account of alleged "prejudice errors in Petitioner's grand jury proceeding" (Pet. 21);

**(4)** Failure to adequately redress Fourth Amendment violations, insofar as defense counsel did not elicit a pretrial ruling prohibiting the Government from introducing evidence from "1751 Foster Street into Petitioner's trial" (Pet. 34);

**(5)** Failure to file a "dispositive timely motion to dismiss the indictment pursuant to Double Jeopardy Clause of the Fifth Amendment" (Pet. 40).

**I.**

With regard to the first argument, the Third Circuit's ruling in *United States v. Nasir* does not help Jones. 17 F.4ᵗʰ 459 (3d Cir. 2021). In *Nasir*, the Third Circuit, sitting *en banc*, overruled *United States v. Hightower*, 25 F.3d 182 (3d Cir. 1994), and held that inchoate crimes (such as conspiracy and attempt) do not qualify as "controlled substance offenses" warranting enhanced sentences for repeat offenders under the Sentencing Guidelines. *Id.* at 472. Two years after *Nasir* was decided, on November 1, 2023, the Sentencing Guidelines were amended to expressly include inchoate offenses, effectively abrogating *Nasir*. U.S.S.G. § 4B1.2(d) (Nov. 1, 2023 ed.); *see also United States v. Smith*, No. 16-4301, 2023 WL 8797892, at *2 (3d Cir. Dec. 20, 2023) (explaining that under "the Sentencing Commission's recent amendment to the definitions of controlled substance offenses . . . [,] they now include the offenses of aiding and abetting, attempting to commit, or conspiring to commit any such offense") (internal quotation marks and citation omitted); *United States v. Ramos*, No. 08-274-2, 2024 WL 1659884, at *4 (E.D. Pa. Apr. 17, 2024) (same). Based on the law as it was under *Nasir* at the time Jones was resentenced, however, Jones argues that the charges against him were inchoate crimes and that his counsel was ineffective for failing to object to the career offender sentencing enhancement imposed by this Court "due to Petitioner hav[ing] no conviction of a controlled substance offense per *Nasir*." Pet. 6. However, the career offender enhancement was appropriate, regardless of *Nasir*.

Under Section 4B1.1 of the Sentencing Guidelines, an adult defendant is a career offender if "the instant offense of conviction is a felony that is either a crime of violence or a controlled

7

substance offense; and . . . the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). If a defendant is a career offender, the Guidelines increase the offense level of the crime for which he is to be sentenced.

Here, Jones faced two instant offenses—one of which was, indisputably, a controlled substance offense.[4] In addition, Jones, an adult, had at least two prior felony convictions of controlled substances offenses.[5] He therefore qualified as a career offender under the Sentencing Guidelines, and his recommended sentence was enhanced under Section 4B1.1(b).

*Nasir* did not change this outcome. It does not matter that Jones faced a conspiracy count in addition to his controlled substance count, or that under *Nasir* prior to the 2023 amendment of Section 4B1.2(d), conspiracy did not qualify as a controlled substance offense for purposes of the Guidelines. *See United States v. Hammonds*, No. 22-2406, 2023 WL 4198041, at *1 (3d Cir. June 27, 2023) ("[T]hough we held in *Nasir* that an inchoate offense like conspiracy isn't a 'controlled substance offense' that triggers career-offender eligibility . . . [defendant] was convicted of both conspiracy *and* a controlled substance offense . . . [s]o he still would qualify as a career offender.")

---

[4] Jones claims he was found guilty of (i) conspiracy and (ii) "aiding and abetting," the latter of which he claims "is not a stand alone criminal offense." (Pet. Rep. 3.) He argues that because both conspiracy and aiding and abetting are inchoate crimes, they "can not provide a basis for the triggering of a chapter 4 enhancement." *Id.* In fairness to Jones, whether aiding and abetting is an inchoate crime appears to have been an unsettled question of law when he was resentenced. *See United States v. Cook,* No. 3:16-312, 2023 WL 4278673, at *2 (M.D. Pa. June 29, 2023) ("An interesting academic debate can be had regarding whether aiding and abetting an offense is really an 'inchoate offense' as that term is traditionally understood…"). Regardless of the aiding and abetting analysis, however, Jones was convicted in Count Seven of distribution under 21 U.S.C. § 841(a)(1), in addition to being charged with aiding and abetting that distribution under 18 U.S.C. § 2. (*See* ECF Nos. 208 (Amended Jury Verdict Form), 211 (Amended Judgment)); *Jones*, 2024 WL 3384917, at *1. Because Jones was convicted of distribution under 21 U.S.C. § 841(a)(1), there was never any question that he faced an instant controlled substance offense. *See Cook*, 2023 WL 4278673, at *4 (citing *United States v. Williams*, 898 F.3d 323, 333 (3d Cir. 2018)); U.S.S.G. § 4B1.2(b).

[5] Jones had three prior convictions for manufacture, delivery, or possession with intent to manufacture or deliver controlled substances. *See Commonwealth v. Jones*, CP-51-CR-0407581-2002 (Phila. Ct. Com. Pl.); *Commonwealth v. Jones*, CP-51-CR-1204771-2002 (Phila. Ct. Com. Pl.); and *Commonwealth v. Jones*, CP-51-CR-0611711-2006 (Phila. Ct. Com. Pl.).

8

(emphasis original).  Because Count Seven is a controlled substance offense, the "instant offense of conviction" was a controlled substance offense.  *See* PSR ¶ 31; U.S.S.G. § 3D1.2; *see also United States v. Shafa*, 768 F. Supp. 3d 242, 260 (D. Mass. 2025) (explaining how separate counts of conviction are "grouped together and form the 'instant offense of conviction'" under the Sentencing Guidelines).  Given that the "instant offense of conviction" was a controlled substance offense, and given Jones's prior felony convictions, Jones qualified as a "career offender" under the Guidelines, even if his conspiracy conviction was not independently a "controlled substance offense" under *Nasir*.

More to the point, Jones has not met his burden to show ineffective assistance of counsel on this issue.  He has not demonstrated, as required by *Strickland*, that his counsel's performance fell below an objective standard of reasonableness for failing to challenge the career offender designation, or that he suffered prejudice.  Nor could he.  It would not have been reasonable for Jones's counsel to challenge the designation under *Nasir* because, as discussed above, the designation was appropriate.  *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").

Jones also argues that his counsel was ineffective for failing to challenge, under *Nasir*, the information notice filed by the Government pursuant to 21 U.S.C. § 851.  Again, however, Jones's reliance on *Nasir* is misplaced.

21 U.S.C. § 851 "sets forth specific procedures allowing a defendant to challenge the validity of a prior conviction used to enhance the sentence for a federal drug offense." *Curtis v. U.S.*, 511 U.S. 485, 491 (1994).  It states that a federal defendant may not face increased punishment "by reason of one or more prior convictions" unless the Government first files an

9

information "stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a). The statute then provides a mechanism for the defendant to challenge the information and a method for resolving such challenges. 21 U.S.C. § 851(b)–(d). Where a statute calls for an increased penalty, such as 21 U.S.C. § 841(b)(1)(B) did in this case, that penalty cannot be imposed unless the Government first complies with the information procedures of 21 U.S.C. § 851.

*Nasir*, which dealt with interpretation of the Sentencing Guidelines, has no bearing on such statutory enhancements. Prior to the 2023 amendment of Section 4B1.2(d), *Nasir* narrowed the universe of crimes that could serve to enhance sentences under the Guidelines. But career offender enhancements under the Guidelines, which the Court may deviate from, are entirely separate from statutory recidivist enhancements, which the Court may not disregard. The recidivist enhancement provisions of 21 U.S.C. § 841(b)(1)(B) were unaffected by *Nasir*. *See Nasir*, 17 F.4th at 472 ("[W]e conclude that inchoate crimes are not included in the definition of 'controlled substance offenses' given in section 4B1.2(b) *of the sentencing guidelines*." (emphasis added)). Because *Nasir* does not bear on statutory recidivist enhancements, Jones's counsel had no reasonable legal grounds to use *Nasir* to challenge the information, and Jones does not argue that the information was factually inaccurate. Under such circumstances, we must presume that the decision not to challenge the information was part of Jones's counsel's sound trial strategy. *Strickland,* 466 U.S. at 689; *see also United States v. Cobb*, No. 09-733-01, 2014 WL 4433868, at *4 (E.D. Pa. Sept. 9, 2014) (rejecting ineffective assistance of counsel claim where "[p]etitioner provides no cognizable reason for why Counsel should have raised a challenge to the accuracy or relevance of the § 851 Notice").

II.

Jones next argues that his counsel was ineffective because he failed to oppose a January 19, 2022 motion by the Government to continue trial. At the time of the motion, trial was set to begin three weeks later, on February 7, 2022. The Government's motion was premised on the unavailability of one of its key witnesses. (*See* ECF No. 140, at 6–7.) That witness carried a high-risk pregnancy and had recently been advised by her doctor not to appear for trial proceedings because the stress of doing so could cause a miscarriage. *Id.* Courts facing similar situations have granted continuances. *See, e.g.*, *United States v. Thomas*, 272 F. App'x 479, 484 (6th Cir. 2008) (affirming trial court's decision to continue a trial because of the high-risk pregnancy of a material witness); *United States v. Scott*, 613 F. App'x 873, 876 (11th Cir. 2015) (similar). On January 27, 2022, we granted the Government's motion unopposed, and trial occurred six months later, in August of 2022.

Jones claims that his lawyer did not consult with him regarding the Government's motion or the "reasons why he did not go to trial on February 7, 2022." (Pet. 14.) He asserts that his counsel contacted him via letter only after the motion was granted, and "made it seem as it was the Honorable court's decision on why Petitioner did not go to trial." *Id.* Jones claims he asked his attorney why he did not oppose the continuation, and "all [counsel] said [was] that it was out of his hands because the Judge did it." *Id.*

Despite these claims, Jones does not contest the fact that the Government's witness was unavailable, the reasons for her unavailability, or that she was material to the Government's case. He thus offers no rationale for concluding that his counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. Indeed, it would have been reasonable for Jones's counsel to oppose the Government's motion only if Jones's counsel had

11

plausible legal or factual bases to do so. *See, e.g.*, *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000) (affirming denial of ineffective assistance of counsel claim where defendant "has not presented any legal authority or pointed to any evidence in the record which would overcome the presumption that counsel's performance constituted sound trial strategy"). Put differently, Jones does not supply any basis from which we can conclude that it was "outside the wide range of professionally competent assistance" for Jones's counsel to accede to the continuance rather than file a thin or frivolous opposition. *See Strickland*, 466 U.S. at 690. Likewise, Jones has failed to show that he was prejudiced by his counsel's decision—he has not shown a reasonable possibility that, but for his counsel's decision to accede to the continuance motion, the result of his indictment would have been different. *Strickland*, 466 U.S. at 694.

**III.**

Jones's third theory of ineffective assistance of counsel is that he was prejudiced by his counsel's failure to move to dismiss Jones's indictment under Federal Rule of Criminal Procedure 12(b).[6] He claims the grand jury's consideration of the unlawfully obtained, and later excluded, evidence was a basis for dismissal, and that his attorney's failure to seek dismissal on such a basis prejudiced him. (Pet. Rep. 7.)

Jones argues that "[b]y consequence of the Government bringing forth illegally obtained evidence for the grand jury to consider, the indictment shall be dismissed. [T]he fifth amendment to the United States constitution requires that an indictment be returned by a legally constituted and unbiased grand jury." (*Id.* (citing *United States v. Serubo*, 604 F.2d 807, 816 (3d Cir. 1979)).)

---

[6] Jones also cites to Fed. R. Crim. P. 6(e)(3)(E)(ii) as an alleged basis for dismissal. (Pet. 21.) Rule 6(e)(3)(E)(ii) allows the court to authorize public disclosure of otherwise secret grand jury proceedings in certain scenarios and is not a standalone basis for dismissal.

While Jones is correct that a grand jury must be legally constituted and unbiased, "neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act." *Costello v. United States*, 350 U.S. 359, 362 (1956). Indeed, the United States Supreme Court has long held that the exclusionary rule, which generally prevents evidence obtained in violation of the Fourth Amendment from being used in a criminal proceeding against the victim of the illegal search or seizure, does not apply to grand jury proceedings. *United States v. Calandra*, 414 U.S. 338, 341–342 (1974). Thus, under controlling precedent, where a grand jury is legally constituted and unbiased, the adequacy or ultimate admissibility of evidence considered by that grand jury is not a valid basis for dismissal. *Id.* at 344–45 ("[T]he validity of an indictment is not affected by the character of the evidence considered"); *Serubo*, 604 F.2d at 814 (citing *Calandra*, 414 U.S. 338 (1974)).

Against this background, and in light of the *Strickland* factors, Jones's third claim of ineffective assistance counsel fails. Jones has not shown that his counsel's decision to forgo filing such a dubious motion to dismiss "fell below an objective standard of reasonableness," nor has he demonstrated a reasonable probability that if such a motion had been filed, the ultimate result of Jones's indictment would have been different. *See Strickland*, 466 U.S. at 694.

**IV.**

Next, Jones argues that his counsel was ineffective because, with respect to Jones's retrial, he failed to move to exclude evidence that was obtained from 1751 Foster Street. 1751 Foster Street was the residence of one of Jones's alleged co-conspirators, Carol Lucy, who consented to a search of the residence. (*See* ECF No. 149-1 (Carol Lucy Consent to Search Form).) That search recovered evidence of drugs, drug packaging materials, and guns, some of which was later used against Jones during his retrial (the "Foster Street Evidence"). Ms. Lucy also testified that the

13

Foster Street Evidence did not belong to her, and that the only person it could have conceivably belonged to was Jones, as he had a key to her apartment and visited frequently.

On July 25, 2022, four weeks before Jones's retrial, the Government filed an affirmative motion to admit the Foster Street Evidence. (ECF No. 149.) The Government's motion laid out the legal grounds for admissibility of the Foster Street Evidence, including a legal argument why Ms. Lucy's consent to the Foster Street search was "sufficiently attenuated and distinct from any unlawful action against the defendant to warrant admission of the evidence acquired therefrom." (*Id.* at 5.)

On August 12, 2022, Jones's counsel filed a response to the Government's motion, writing that "[d]efendant, Matt Jones, having reviewed [the motion to admit the Foster Street Evidence] . . . does not object to the Government's motion." (ECF No. 152, at 1.)

Jones now claims that his lawyer was ineffective for not opposing the Government's motion. Specifically, he argues that by "not reestablishing [Jones's] expectation of privacy and its violation in . . . 1751 Foster street . . .," Pet. 34, "[c]ounsel allowed the Government to produce a result which it could not command directly." Jones alleges that police "used [Jones's] key to open 1751 Foster street and that key was tak[en] from his home during the illegal search [of his home]." (Pet. Rep. 8.) He argues that, because the key was obtained during the unconstitutional search of his home, "any and everything that was the fruit of that unlawful search should have been suppressed," including the Foster Street Evidence. (*Id.*)

Despite his claims about the key, the record is clear that 1751 Foster Street was the residence of Ms. Lucy, and that Ms. Lucy voluntarily consented to the search of her apartment. (ECF No. 149-1.) Ms. Lucy had authority over her apartment to consent to the search and knowingly and validly consented. *Id*. Indeed, even if Jones had a privacy interest in Ms. Lucy's

14

residence, such that he has standing to challenge the search—a proposition which the Government disputes—Ms. Lucy had the common authority to consent to the search, as it was her apartment. *United States v. Anderson*, 284 F. App'x 977, 979 (3d Cir. 2008). As a result, the Foster Street search was valid as to Jones, even if he had an "expectation of privacy" in the apartment. *United States v. Matlock*, 415 U.S. 164, 170 (1973) ("[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared."). Because Ms. Lucy's consent to the search was valid, the Foster Street Evidence was valid as well. *See U.S. v. Stabile*, 633 F.3d 219, 231 (3d Cir. 2011); *cf. United States v. White*, 81 F.3d 775, 780 (8th Cir. 1996) ("Because Wilson's request to search White's vehicle involved no Fourth Amendment violation, the fruits of that search need not be suppressed so long as White voluntarily consented to the search.").

As with Jones's other theories of ineffective assistance of counsel, this one fails both *Strickland* prongs. Jones has not met his burden to show that his counsel "fell below an objective standard of reasonableness" by failing to challenge the Foster Street Evidence. *Strickland*, 466 U.S. at 694. Moreover, Jones could not have been prejudiced by that failure because opposition of the Government's motion would have been unsuccessful. *See United States v. Vines*, 134 F.4th 730, 740 (3d Cir. 2025) ("[The Third Circuit] will not treat counsel's failure to raise a meritless argument as prejudicial.").

**V.**

Jones's final claim of ineffective assistance of counsel relates to his counsel "not filing a dispositive timely motion to dismiss [the] indictment pursuant to [the] Double Jeopardy Clause of the Fifth Amendment." (Pet. 40.) He argues that after the Third Circuit's ruling on his initial appeal—wherein the Government confessed error related to Jones's suppression motion and the

15

case was remanded—he told his counsel to dismiss the indictment because Jeopardy was attached. (*Id.*)  He claims his counsel had several months to file such a motion to dismiss, and never did,[7] thereby prejudicing Jones because the Government had "all the time to figure out what it wanted to do in the case[.]"  (*Id.*)

Jones's counsel did in fact file a motion to dismiss his indictment pursuant to the Double Jeopardy clause.  (ECF No. 173.)  This court denied that motion, finding that "[Jones's] case does not come close to the 'exceptional circumstances' that might merit th[e] remedy" of dismissal. (ECF No. 176, at 1 n.1.)  On appeal, Jones raised the issue again, and the Third Circuit affirmed, holding: "the Double Jeopardy clause is not violated when, as here, the Government confesses error on appeal and retries the defendant following reversal."  *Jones*, 2024 WL 3384917, at *2 (citing *Stroud v. United States*, 251 U.S. 15, 18 (1919)).

Because the argument for dismissal was meritless, the fact that Jones's counsel could have presented it earlier is irrelevant.  *See United States v. Canalichio*, 369 F. Supp. 3d 625, 635 (E.D. Pa. 2019) (holding attorney cannot be found to have been ineffective for failing to raise a meritless argument).  As with his previous claims, Jones has failed to establish that his attorney's performance fell below an objective standard of reasonableness, and his motion is therefore denied. Even if Jones could show that his lawyer was deficient, he has not demonstrated prejudice—a "more timely" Double Jeopardy motion would have been denied in any event, and Jones has not shown that presenting it earlier would have affected the outcome of trial.

The record conclusively shows that Jones is entitled to no relief, and therefore no hearing is necessary to rule on this matter.  *See* 28 U.S.C. § 2255(b).  Jones's motion will be denied.

---

[7] Jones's petition claims his counsel "never filed this Double Jeopardy motion."  (Pet. 40.)  On reply, Jones appears to have changed positions and states that "[c]ounsel waited until the eve of trial to file the double jeopardy motion in which at the time had no merit."  (Pet. Rep. 10.)

### C. Certificate of Appealability

A petitioner may not appeal a final order in a § 2255 proceeding unless a circuit or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28. U.S.C. § 2253(c)(2). "That standard is met when 'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner." *Welch v. United States*, 578 U.S. 120, 127 (2016) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, reasonable jurists would not debate that Jones is not entitled to relief on the Motion. The Court therefore declines to grant a certificate of appealability.

## IV. CONCLUSION

For the foregoing reasons, the Motion is denied and no certificate of appealability will issue. An appropriate order follows.

**BY THE COURT:**


*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**